[Crim. No. 3011. First Dist., Div. One. June 24, 1954.]

THE PEOPLE, Respondent, v. ROY E. MacARTHUR, Appellant.

Roy E. MacArthur, in pro. per., and Benjamin F. Marlowe for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Victor Griffith, Deputy Attorney General, J. F. Coakley, District Attorney, and Robert H. McCreary, Assistant District Attorney, for Respondent.

PETERS, P. J.—Roy E. MacArthur and Racquel Gatica were charged with two violations of section 11500 of the Health and Safety Code, the first count charging the unlawful possession of heroin on April 22, 1953, and the second, the unlawful possession of marijuana on the same date. The defendants were tried together. MacArthur, the sole appellant, was found guilty on the heroin count and not guilty on the marijuana count. He appeals from the judgment of conviction, and from the order denying his motion for a new trial. The basic question presented is whether there is any substantial evidence to support the finding that appellant possessed the heroin as charged in count one. Appellant also challenges the admissibility of certain evidence.

On April 22, 1953, and for some time prior thereto, MacArthur and Racquel Gatica were and had been living together in an apartment in Oakland. About noon that day a group of city and state enforcement officers, in the company of MacArthur, who earlier that same day had been arrested for the sale to a state narcotic officer of a large quantity of heroin, entered the apartment. Racquel was then present. The enforcement officers conducted a search, and found in the kitchen on a shelf, a small locked vanity box. Racquel admitted then and on the trial that the box was hers. The key to the box was found on a table in the living room of the apartment. When opened, it was found that the box contained, among other things, a rubber finger stall containing a white powder later determined to be $5\frac{1}{2}$ grains of heroin, an eye dropper, two hypodermic needles, several used and unused matches, some Kleenex stained with what appeared to be blood, a bent discolored spoon, and some fine wires. All this paraphernalia was identified as articles customarily employed by users to inject heroin. Racquel then and at the trial denied all knowledge of these articles, professing complete ignorance as to how they got into her vanity box. It is the possession of this heroin that forms the charge upon which MacArthur was convicted. At the trial he denied knowledge of the contents of the box, and denied that he ever had possession of, or ever exercised any control over, the box, or its contents.

There were several other articles in the box, including a necktie that MacArthur admitted at the trial was "probably" his. A necktie is frequently employed by a narcotic user to tie the arm while administering the heroin by means of a hypodermic needle. Although when the box was first opened by the officers the necktie and the other articles were removed

therefrom and then replaced, no other narcotic was then discovered. But several days later in the state narcotic laboratory in San Francisco, the box having been in police custody in the interim, when the necktie was lifted out of the box one marijuana cigarette fell out of the tie. It is the possession of this marijuana cigarette that formed the basis of the second count of the information of which MacArthur was acquitted.

The prosecution at the trial, over objection, was permitted to produce evidence that on the morning of April 22, 1953, MacArthur had completed a sale of some 950 grains of heroin, in four rubber finger stalls similar to the one found in the vanity box, to a narcotic officer, and was immediately arrested. Full details of that transaction were offered by the prosecution, and admitted over defense objections. MacArthur was charged, tried and convicted in a separate proceeding for his activities in connection with that sale. The judgment has been affirmed. (*People* v. *MacArthur*, 125 Cal.App.2d 217 [270 P.2d 37].) It was immediately after this arrest that MacArthur was taken to his apartment and the search was made that resulted in the discovery of the heroin and the user-equipment found in the vanity box.

During this search, and before the vanity box had been discovered, one of the officers had the following conversation with MacArthur: "I asked him if there was any more stuff around the house and he said, 'No,' that there wasn't, that 'unless there may be something left around for her use,' referring to Miss Gatica. . . .

"And I said, 'Do you know where it might be?' And he said, 'No,' that he did not 'unless she had it hid around the house some place,' but he knew of nothing else himself."

Racquel, at the apartment, when booked at the police station, and at the trial, denied that she had ever used narcotics. However, at the apartment, and at the police station, a physical examination disclosed four or five puncture marks along the line of a vein in her left arm. She claimed that they were fleabites. At the trial one of the arresting officers testified that at the time of the search she appeared to be under the influence of narcotics, and several officers testified that the equipment found in the vanity box was moist, as if recently used.

The charge upon which MacArthur was convicted was "possession" of heroin. His main contention is that the evidence does not support the finding of the jury that he was possessed of the heroin found in the vanity box.

■ The evidence shows the following facts:

1. The heroin was found on premises jointly occupied by MacArthur and Racquel. While the heroin was in a locked vanity box owned by Racquel, the key to that box was in plain sight on the top of a table in the living room.

2. Just a few minutes before the heroin was found in MacArthur's apartment, MacArthur was in possession of a large quantity of heroin.

3. The rubber container in which the heroin in the vanity box was found, was similar to the four rubber containers of heroin sold by MacArthur to narcotic officers earlier that same day.

4. A necktie that MacArthur admitted was "probably" his was found in the vanity box.

5. When questioned about the possibility of any narcotics on the premises, MacArthur stated there was none "unless there may be something left around for her use," and that he did not know where it was "unless she had it hid around the house someplace."

6. There was evidence that Racquel, with whom MacArthur was living, was a user, was under the influence of narcotics when the officers entered the apartment, and that the equipment in the vanity box recently had been used.

7. It is a reasonable inference that MacArthur and Racquel were closely associated in the unlawful possession of narcotics, or that MacArthur was supplying his girl friend with heroin.

It is our opinion that this evidence supports the implied findings of the jury that MacArthur knew of the presence of the contraband in the vanity box, exercised, or had the right to exercise, dominion and control over it, and was therefore in constructive joint possession of it. ■ It is not the function of an appellate court to pass on the weight of the evidence. ■ As was said in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]: "If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (See also *People* v. *Huizenga,* 34 Cal.2d 669, 676 [213 P.2d 710]; *People* v. *Torres,* 98 Cal.App.2d 189, 193 [219 P.2d 480].)

There are many cases upholding convictions of possession where the evidence of possession was of a constructive joint possession and was of the general character of that here in-

volved. (See, for example, *People* v. *Basco,* 121 Cal.App.2d 794 [264 P.2d 88] ; *People* v. *Williams,* 121 Cal.App.2d 679 [263 P.2d 853] ; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337 [244 P.2d 750] ; *People* v. *Rodrigues,* 25 Cal.App.2d 393 [77 P.2d 503] ; *People* v. *Torres,* 98 Cal.App.2d 189 [219 P.2d 480] ; *People* v. *Brown,* 102 Cal.App.2d 60 [226 P.2d 609] ; *People* v. *Charlie Quong,* 5 Cal.App.2d 137 [42 P.2d 386] ; *People* v. *Graves,* 84 Cal.App.2d 531 [191 P.2d 32] ; *People* v. *Hardeman,* 94 Cal.App.2d 51 [210 P.2d 283] ; *People* v. *Rumley,* 100 Cal.App.2d 6 [222 P.2d 913] ; *People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50].) Under the rules announced in these cases the evidence was sufficient.

█ The second contention of MacArthur is that prejudicial error was committed in admitting, over objection, evidence by the arresting officers of the circumstances under which MacArthur, a short time before the heroin was found in his apartment, had sold a large quantity of heroin to an officer. In addition to the testimony of several officers as to the circumstances of that transaction, photographs taken during that prior transaction were introduced. MacArthur admits that such evidence was relevant and had some probative value, but contends that it was so inflammatory that no jury could listen to it for the limited purpose for which it was admitted without being prejudiced against him.

There is no merit to this contention. The prosecution had to prove possession on the part of MacArthur of the heroin found in the apartment. This included the necessity of proving knowledge on the part of MacArthur of the presence of the contraband found in the vanity box. (*People* v. *Gory,* 28 Cal.2d 450, 455 [170 P.2d 433].) The fact that a few minutes before the heroin was found in the vanity box MacArthur was in possession of a large quantity of heroin, was obviously relevant on these issues, and was therefore also relevant to show that the heroin in the apartment probably belonged to him. █ As was stated in *People* v. *Torres,* 98 Cal.App.2d 189, 192 [219 P.2d 480] :

''The general test of relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. If it does, then the evidence is admissible whether or not it embraces the commission of another offense and whether the other crime be similar or dissimilar. [Citing a case.]

"Evidence of other acts of a similar nature may be admitted when not too remote, to prove a material fact, or where it tends to show motive, scheme, plan or system, or to show *guilty knowledge* and intent.   [Citing four cases.]" (See also *People* v. *Mullaly,* 77 Cal.App. 60, 64 [245 P. 811]; *People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924]; *People* v. *Morani,* 196 Cal. 154, 158 [236 P. 135].) The evidence was properly admissible.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 9, 1954, and appellant's petition for a hearing by the Supreme Court was denied July 22, 1954.