[Crim. No. 1358.    Fourth Dist.    Aug. 18, 1958.]

THE PEOPLE, Respondent, v. EDWARD NORMAN CAHILL, Appellant.

Thomas Whelan for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

McCABE, J. pro tem.*—By an information defendant was charged with the possession of a narcotic in violation of section 11500, Health and Safety Code. From the judgment of conviction entered subsequent to a jury verdict of guilty, defendant appeals.

On September 2, 1957, the police department received information from the Chief Investigator, Naval Training Center, that several sailors had contracted a venereal disease at a particularly described house on K Street; the sailors were

---

*Assigned by Chairman of Judicial Council.

being contacted by a man in the downtown area and then taken to this house.

From the same source of information and on September 4, the police department received additional information concerning these activities together with the first name of the alleged prostitute, the description of the car used by the pimp, and the unlisted telephone number supplied to each participating sailor. The police department then obtained the address of the house, drove past it and thus determined the description of a white picket fence previously given by the informant fitted the appearance of the fence at the particular address.

On September 5, the police department enlisted the aid of a sailor and upon being supplied with information, the name Betty, and the telephone number, the sailor in the presence of a police officer telephoned Betty. An agreement was made, price predetermined, and Betty gave him directions on how to reach the house on K Street. A police officer who stood next to the sailor overheard the telephone conversation. In two cars, three police officers in plain clothes and the sailor then proceeded to the address given by Betty. The sailor was supplied with marked money. Upon approaching the address the police officers noticed (1) a car fitting the description of the car supposedly operated by the pimp, and (2) the house was the same as previous information and investigation had described. The sailor got out of the car in which he was riding and approached the house and entered it. One police officer went to the rear of the house, two officers remained in front for a period of a minute or two and then went into the house. Upon entering the living room they noticed a man later identified as Zeb, who was watching television. Their entrance did not disturb Zeb, and he made no objections. The officers located a bedroom, entered it and found a nude female on the bed, the seated sailor with his hat off and without his marked money. One of the officers arrested the nude female. She then disclosed the location of the marked money.

At no time did the officers have a search warrant, or information concerning narcotics at this address. To this point in the recitation of events, the officers did not know of the presence of anyone else in the K Street house except Zeb, the nude female and the sailor.

An officer was left in the bedroom with the female and sailor, and Officer Morse started through the house. Off the

kitchen was a small room with an open door. In this small sparsely furnished room Officer Morse found the defendant lying on the bed partly clothed. Defendant was arrested for residing in a house of prostitution. The police officer who had been at the rear of the house was then admitted into the small room through a door leading to the outside rear of the house. No search of the small room was made at this time. Defendant was left in charge of the third officer. After the defendant and Zeb were transferred to the jail by uniformed officers called for that purpose, the third officer made a search of the small room. There is no direct evidence that anyone entered the small bedroom from the time defendant and the police officer left until it was searched. In making the search he looked under the bed and ". . . found a brown Manila sack at the north wall about half way in the middle of the bed at the head." He testified: . . . [T]his is the brown Manila sack I observed under the bed. . . ." There was no dust or lint on the floor or the Manila sack. At the time of trial an expert testified the contents of the Manila sack was marijuana. After finding the Manila sack and contents and later that night an additional charge of possession of narcotics was placed against defendant. At the jail and after the charge of possession of narcotics was placed against defendant an officer testified he, in the presence of defendant, removed the debris from the pockets of defendant's shirt and pants.

Witnesses for the defense testified that: On September 2, 1957, defendant rented the small room from Zeb, and only stayed there at night, eating his meals at a relative's home. Defendant testified and denied knowledge or ownership of the narcotics and that on September 3, two days before the arrest, upon permission granted by him, a woman had used his room and bed for a short time and then had changed the linen.

The debris from defendant's pockets and the sack containing marijuana were admitted to evidence over the objections of defendant. Upon this appeal defendant strongly urges that the evidence should not have been admitted because it was obtained through unlawful search and seizure.

Under the provisions of section 840, Penal Code, the officer could arrest for a misdemeanor when the offense was committed in his presence. ▣ An offense is in the view of the officer when his senses afford him knowledge that it is being committed. ▣ Whether the offense was committed in the presence of the officer is primarily a question for the trier of facts, and his findings should not be disturbed on appeal un-

less it is without support in the evidence. (*Elrod* v. *Moss,* 278 F. 123; *United States* v. *Borkowski,* 268 F. 408; *Davis* v. *United States,* 328 U.S. 582 [66 S.Ct. 1256, 90 L.Ed. 1543].)

A police officer overheard the sailor's conversation with Betty in which the sailor was invited to the K Street house, and saw the sailor enter the K Street house at the address given by Betty. Under these facts the offense was completed in the presence of the police officer. See *In re Chase,* 119 Cal.App. 432, 434 [6 P.2d 577], which held the offense under section 318 Penal Code had not been completed until, as a result of an invitation, a visit was actually made.

The offense having been committed in the presence of an officer an arrest could be made. It was not necessary for the officers to exercise the authority given to them under section 844, Penal Code, because the officers merely opened an unlocked door and entered the premises without objection. This entry was made to make an arrest for a misdemeanor committed in the presence of an officer, and the officer had reasonable and probable cause to do so.

Reasonable cause for a search of the premises was sufficiently established. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531] ; *People* v. *Brown,* 45 Cal.2d 640, 642 [290 P.2d 528] ; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Romero,* 161 Cal.App.2d 404, 406 [327 P.2d 205].) Betty's arresting officer proceeded to make a search of the premises. In his search he discovered defendant in the small room, recognized him as a person previously arrested for possessing narcotics, and arrested him under the provisions of section 315, Penal Code. Under these circumstances and the lawful arrest, the officers had a right to make a search of the immediate surroundings for any evidence reasonably connected with the arrest. In this type of case the officers could make a reasonable search in an attempt to find evidence regarding defendant's willful residency in the house. In looking over this small room an officer "leaned down and looked under the bed" and saw the Manila bag. Under the circumstances this cannot be held to be an unlawful search.

In *Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 1101, 91 L.Ed. 1399], the Supreme Court of the United States said: "The test of reasonableness cannot be stated in rigid and absolute terms. 'Each case is to be decided on its own facts and circumstances.' *Go-Bart Importing Co.* v. *United States,* 1931, 282 U.S. 344, 357 [51 S.Ct. 153, 158, 75 L.Ed. 374]."

In making a reasonable search for incriminating evidence for which defendant was arrested the police officer discovered other evidence, i.e., the marijuana. He did not have to ignore it but it was proper for him to take it into his possession. In *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721] our Supreme Court cited and quoted with approval from *Paper* v. *United States*, 53 F.2d 184, 185, as follows:

" 'Where the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of the citizens, there is no reason for excluding evidence of crime discovered in the course of the search. If the officers . . . had discovered in the cellar a counterfeiting plant in operation, would it have been their duty to ignore it? If they had come upon the body of a murdered man, would their testimony as to finding the body be excluded?' " See also *People* v. *Littlejohn*, 148 Cal.App.2d 786, 791 [307 P.2d 425].

We conclude there was no error committed by the trial court in admitting the Manila sack and contents into evidence.

█ Defendant next contends that there was no evidence to prove defendant possessed the Manila sack and marijuana contents. Defendant argues that after the arrest of defendant the small room was left unoccupied for a period of time and it is possible some other person placed the Manila sack and contents in the place where the police officer found it, and it is possible either the sailor or the female went into the small room and left the Manila sack. These arguments are presented to this court disregarding the evidence that a police officer was left in charge of the female with the sailor present; later the sailor went to one of the police cars and remained there until one of the officers drove away; the female was taken to the jail; and Zeb and the defendant were taken to the jail.

█ This appellate tribunal is governed by certain rules on this appeal. One of the rules is stated in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], as applicable:

"The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. █ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that

upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.

The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof . . .  We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.'  If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.''

Also, if the evidence supports the inference that appellant was unlawfully in possession of the forbidden narcotic, the fact it would likewise support a contrary finding does not warrant the reviewing court in setting aside the judgment on the ground of insufficiency of the evidence. (*People* v. *Bassett,* 68 Cal.App.2d 241, 246 [156 P.2d 457].)

In *People* v. *White,* 50 Cal.2d 428, 431-432 [325 P.2d 985], it is said:

''Numerous cases have recognized that constructive possession of a narcotic constitutes a violation of section 11500 of the Health and Safety Code. Citations.''

Constructive possession may be proved by circumstantial as well as direct evidence. (*People* v. *Rollins,* 161 Cal.App.2d 560, 564 [326 P.2d 938]; *People* v. *White, supra*; *People* v. *Blinks,* 158 Cal.App.2d 264, 267 [322 P.2d 466].)

The evidence here, and the reasonable inferences to be drawn therefrom, support the verdict and judgment of conviction, and these will not be set aside since the evidence is legally sufficient to uphold them. (*People* v. *Gonzales,* 116 Cal.App.2d 843 [254 P.2d 603]; *People* v. *Newland, supra.*)

Judgment affirmed.

Griffin, P. J., and Mussell, J., concurred.