[Crim. No. 7450. Second Dist., Div. One. May 2, 1961.]

THE PEOPLE, Respondent, v. ANTHONY V. DOMINGUEZ, Appellant.

Charles Gordon for Appellant.

Stanley Mosk, Attorney General, and Felice R. Cutler, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted of possession of heroin in violation of section 11500, Health and Safety Code, as charged. The cause was submitted to the trial court on the transcript of the preliminary hearing; defendant neither offered a defense nor testified in his behalf. Appealing from the judgment and order denying his motion for new trial, he contends that the evidence is insufficient to show possession, and that Exhibit 1 (one capsule of heroin and several hundred empty gelatin capsules) was obtained by an illegal search and seizure.

H. E. Dorrell, a narcotics officer since 1953, who had observed addicts "on hundreds of occasions," previously examined persons using narcotics and arrested "several hundred" for addiction, had information that defendant was selling narcotics from a house at 4617 Dozier Street, by meeting users outside. Around 11:45 a. m. Dorrell and Sergeant Fesler were watching the house from a point down the street; they observed an auto park in front and defendant come out and engage in a conversation with the driver. Inasmuch as defendant was about to enter the house by the time they reached him, the officers continued down the street. A few minutes later they saw defendant again leave the house, get into a car and drive away; a short time later he returned and walked onto the front porch of the house; Dorrell went toward him, called "Tony," walked up to defendant on the porch

and identified himself. Dorrell asked defendant if he used narcotics, he said that he did; the officer observed marks on the exposed left inner elbow which resembled fresh hypodermic marks (from 2 to 21 days old). He then examined defendant's arm, concluded defendant was a user and arrested him on the porch. Thereupon defendant went with the officers into the house where he lived with his father and sister; he took them to a bedroom which he said belonged to him. Dorrell began a search of the room; from the bathroom Sergeant Fesler called Dorrell; he and defendant went into the bathroom where they saw Fesler standing beside a stand with a drawer open, pointing into the drawer; they looked in and saw a capsule of heroin in the bottom of the drawer. At that time Dorrell asked defendant how long he had had the capsule; he answered that he didn't know how "that capsule got there" or anything about it, that "Fesler must have put it in the drawer." Dorrell then found in the same stand on the bottom shelf a green box containing empty gelatin capsules, and Fesler removed a brown sack containing numerous empty capsules from the top of the closet in defendant's bedroom; Dorrell asked defendant about them and he said he had them for a long time but that he hadn't sold any narcotics for the last five months, he had the capsules because he was going to "burn somebody" (sell a user a substance not a narcotic representing the same to be one), he had just gotten out of a narcotic hospital at Fort Worth after staying there seventeen days, and the last time he used any narcotics was the day before when he and another man purchased two capsules of narcotics and "fixed."

Appellant claims that inasmuch as the heroin was found in a bathroom available to other persons living in the house, and he denied to the officers any knowledge of the narcotic, the evidence failed to show possession; relying mainly in *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177], he argues there is nothing in the record from which knowledge of the presence of the capsule could be inferred. He makes no contention that he was not aware of its narcotic character.

*People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177], presents a set of facts dissimilar to the one at bar. The officers went to Antista's apartment in his absence and found there two persons and some marijuana. Appellant testified at the trial that he had been away from the apartment from 3 p. m. to after midnight, knew nothing of the marijuana and was

a nonsmoker because of an arthritic condition. There was no evidence that Antista had ever had any connection with narcotics. In addition to the presence of the marijuana in his apartment there was no incriminating statement or circumstance from which it could be inferred that defendant had knowledge it was there and had any control over it. That is not here the fact. Dominguez made numerous incriminating statements to police officers, and various inculpatory circumstances in the record give rise to an inference of defendant's possession of the narcotic. In addition to the presence of the heroin in the bathroom, defendant admitted to police that he was a user; there were fresh hypodermic marks on his left arm; in defendant's bedroom was narcotic paraphernalia consisting of numerous empty gelatin capsules similar to those found in the bathroom, all of which he admitted belonged to him; and there is his further admission that he had just gotten out of a narcotic hospital, that the last time he used narcotics was the day before when he and another person bought two capsules and "fixed," that he hadn't sold any narcotics for five months, and that he had the empty capsules because he was going to "burn somebody."

 ██ While other members of the family, defendant's father and sister, had access to the bathroom, "(e)xclusive possession of the premises is not necessary nor is physical possession of the drug of the essence" (*People* v. *Flores*, 155 Cal. App.2d 347, 349 [318 P.2d 65]; *People* v. *Van Valkenburg*, 111 Cal.App.2d 337 [244 P.2d 750]); and possession of the narcotic "may be shown by circumstances as well as by direct evidence, and may be constructive as well as physical." (*People* v. *Van Valkenburg*, 111 Cal.App.2d 337, 340 [244 P.2d 750]; *People* v. *Flores*, 155 Cal.App.2d 347 [318 P.2d 65]; *People* v. *Ross*, 149 Cal.App.2d 287 [308 P.2d 37]; *People* v. *Bagley*, 133 Cal.App.2d 481 [284 P.2d 36].) The presence of the heroin in what appears to be the only bathroom in the house in which defendant lived, coupled with defendant's conduct and his admissions, explanations and denials, raised a reasonable and permissive inference that the narcotic belonged to him (*People* v. *Van Valkenburg*, 111 Cal.App.2d 337 [244 P.2d 750]; *People* v. *Foster*, 115 Cal.App.2d 866 [253 P.2d 50]), especially in the absence of any showing that the father or sister were suspect or had any prior connection with narcotics. The evidence is clearly sufficient to support the conviction.

Defendant's denial to officers that he knew anything about the capsule or how it got there, and his accusation that Fesler must have put it in the drawer, lost any semblance of credibility when the officer subsequently found defendant's empty capsules and the defendant admitted he had just returned from a narcotic hospital, had bought two capsules and "fixed" the day before, and had not sold any narcotics for five months (inferring he had previously been a seller), particularly when considered in the light of his admission at the outset that he was a user, and the existence of the fresh needle marks on his arm. Obviously, and for good cause, the trial court disbelieved defendant's denial of any knowledge of the heroin, and rejected his accusation of Sergeant Fesler. (*People* v. *Stanciell*, 121 Cal.App.2d 798 [264 P.2d 576].) Defendant did not see fit to deny or accuse under oath, for he did not testify and neither offered any evidence on his own behalf nor elaborated on any defense that the narcotics belonged to anyone else. We will not disturb the trial court's determination against the defendant of the factual issue of possession (*People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433]; *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].)

 Appellant's objection to the admission into evidence of Exhibit 1 (the capsule of heroin and several hundred empty capsules) was overruled by the trial court. He predicates his claim that this evidence was obtained by an illegal search and seizure on the theory that the search of his house was not incident to his arrest inasmuch as the arrest occurred outside. The law does not support such a position.

Believing defendant to be a narcotics user, based upon defendant's admission and the fresh needle marks on his arm, the officers arrested him on the front porch of a house from which they had just seen him several times emerge and enter, into which, immediately after his arrest, he took the officers and in which he said he lived. No contention is made that defendant's arrest was unlawful. It is conceded that a search without a warrant may be made incident to a lawful arrest if it is reasonable and made in good faith. A search, however, "is not restricted to the area immediately surrounding the location of the defendant at the time he is arrested," the law contemplates a reasonable search of the vicinity (*People* v. *Lawrence,* 149 Cal.App.2d 435, 445 [308 P.2d 821]); it also "extends to the premises under the control of the defendant" (*People* v. *Scott,* 170 Cal.App.2d 446, 453 [339 P.2d 162]), whether the arrest took place therein as

in *People* v. *Dixon*, 46 Cal.2d 456 [296 P.2d 557] ; *In re Dixon*, 41 Cal.2d 756 [264 P.2d 513], and *People* v. *Scott*, 170 Cal. App.2d 446 [339 P.2d 162], or outside the dwelling—in the entrance hall (*People* v. *Lawrence*, 149 Cal.App.2d 435 [308 P.2d 821]), in the adjacent driveway (*People* v. *Montes*, 146 Cal.App.2d 530 [303 P.2d 1064]) or in a driveway of the building next door. (*People* v. *Cisneros*, 166 Cal.App.2d 100 [332 P.2d 376].) In the instant case it is undisputed that defendant was arrested on the premises searched, albeit outside the door on the porch, still on the premises where he lived; and the search took place immediately upon, and contemporaneously with, his arrest. These facts render the reasoning in the cases cited by appellant inapplicable—for instance, in *People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433], the search of defendant's room was a substantial distance from the place of arrest and 48 hours later, in *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d 678], "the arrest took place on a public street, not upon any part of the premises on which he lived" (p. 24), and in *People* v. *Ransome*, 180 Cal.App.2d 140 [4 Cal.Rptr. 347], the arrest took place in the industrial part of the city, the search of his residence was in another part and not contemporaneous therewith.

 Thus as an incident to defendant's arrest it was proper for the officers to search the premises on which he was arrested and in which he lived, inasmuch as they believed that he kept narcotics therein, and seize any contraband and paraphernalia which they believed was being used by him in the commission of the crime for which he was arrested. (*In re Dixon*, 41 Cal.2d 756 [264 P.2d 513].) The search of the house was reasonable and proper and the evidence obtained thereby was admissible. There is nothing in this case in conflict with the fundamental principle urged by appellant—that "one's house cannot be lawfully searched without a search warrant, except as incident to a lawful arrest therein" (*Agnello* v. *United States*, 269 U.S. 20, 32 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]).

For the foregoing reasons the judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.