[Crim. No. 7590. Second Dist., Div. One. Nov. 6, 1961.]

THE PEOPLE, Respondent, v. PAUL LEROY ALLEN, Appellant.

Gerald J. Levie for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD, P. J.—Defendants Paul Leroy Allen and Ann Shirley Allen were accused of unlawfully possessing heroin. In a nonjury trial they were convicted. They appealed from the judgment. Ann Shirley Allen filed a document which stated that she abandoned her appeal. Pursuant to that state-

ment, her appeal was dismissed. The information herein alleged that defendant Paul Leroy Allen had been convicted previously of three felonies (attempted robbery, grand theft [amended to allege forgery] and forgery).

Appellant contends that the officers illegally entered his hotel room in that there was no probable cause to believe that an offense had been committed or was being committed by either defendant; that the arrest, search, and seizure were illegal and the court erred in receiving the heroin in evidence; that the corpus delicti was not established, and the court erred in receiving evidence as to extrajudicial statements of appellant.

Officer Cochran, a policeman of Los Angeles, testified that on July 7, 1960, about 11 p. m., his immediate supervisor, Sergeant Trotsky, told him and Officer Parker that a 1951 green Buick automobile, bearing license number KSW 943, had been seen on a parking lot about the same time on July 7 that a theft, from another automobile on that lot, had occurred; that Sergeant Trotsky also told him that a 1951 green Buick, very similar to the aforesaid Buick, had been seen leaving the scene of a burglary that had occurred on July 7 at an appliance store which was in the 3900 block of Sunset Boulevard; Officers Cochran and Parker checked the records of the Department of Motor Vehicles and found that the license KSW 943 was registered in the name of Paul L. Allen; then they checked the records at the Department of Records and Identification of the Police Department and found that a Paul Leroy Allen had been arrested numerous times for burglary, narcotics, and robbery—on one occasion he was arrested for armed robbery; those records also indicated that he had been arrested on one occasion with Shirley Ann Allen who was also known as Shirley Ann Miller; the officers checked her record at that department and found that she had been arrested for narcotics; they obtained pictures of said persons; then the officers talked with Sergeant McMonagle who told them that he had seen a 1951 green Buick, with license KSW 943, parked in the vicinity of 7th Street and Union Avenue; the officers went to that vicinity and saw a 1951 green Buick, with said license number, which was parked on a street near Union Avenue; at that time, which was about 2 a. m. on July 8, they began checking the hotels in that area by showing the pictures to the hotel clerks and asking them if they had seen those persons; about 3:45 a. m. they showed the pictures to the clerk at the Strand Hotel, which is at 729 South Union Avenue, and

he said that those persons were in room 231 and were registered as Mr. and Mrs. Robert Monroe; the officers asked the clerk if they might have the key to that room, and he gave the key to them; they went to the room, opened the door with the key, drew their guns, trained flashlights on the defendants who were sleeping in the bed, and told them they were under arrest for burglary; the defendants got out of bed and the officers handcuffed them; while handcuffing them, the witness saw hypodermic needle marks on their arms; while searching the room, the witness removed the head from a figurine which was on a stand near the bed, and he found in the body of the figurine a rubber balloon containing a white powder; they asked defendant Paul Allen if he had guns in the room; he replied that there was one at the foot of the bed in a handbag; he (witness) recovered the gun and noticed there were various appliances in the room, such as an electric can opener, an iron, and a radio; they also found a hypodermic syringe and needle in a bureau drawer; they did not have a search warrant or a warrant of arrest.

Officer Cook testified that on July 11, 1960, about 11:30 a. m., he saw defendant Paul Allen in jail, and at that time defendant's nose was running, his eyes were watering, he was shivering and appeared to be sick; he (witness) saw scar tissue, marks, and fresh scabs on defendant's left arm; defendant said he felt terrible and needed a fix, that his last fix was on Thursday (four days previously), and that he had been using heroin about 14 years; in the opinion of the witness, the defendant was suffering from withdrawal of narcotics.

Officer Glazer testified that when he saw the defendant Paul Allen at the jail on July 8 about 10:15 a. m., the defendant appeared to be quite ill; the defendant said he owned a 1951 Buick and an Oldsmobile, and that the gun belonged to Jerry Haynes.

It was established that the white powder which was found in the figurine was heroin.

When the heroin was offered in evidence at the preliminary examination and at the trial, the defendants objected thereto on the ground that the entry into the room and that the arrest and search were illegal for the reason there was no probable cause to believe that a felony had been committed or was being committed. They also moved to suppress such evidence on that ground. The objection was overruled, and the motion was denied.

Defendant Paul Allen did not testify.

Defendant Ann Shirley Allen, wife of the other defendant, testified that on July 8, 1960, about 2 p. m., she and Paul returned to the hotel and went to sleep; she was addicted to the use of heroin; about 3 p. m., while Paul was sleeping, she left the hotel for the purpose of getting heroin; she did not awaken him, because he had been trying to stop her from using narcotics; she drove the Oldsmobile to East Los Angeles and bought one-fourth ounce of heroin for $75; when she returned to the hotel, after having been gone about 45 minutes, Paul was still sleeping; after giving herself an injection of the heroin, she put the remainder in the figurine and then went to sleep; they awakened about 7 p. m. and then went to a place on Manchester Boulevard where they had a few drinks; they returned to the hotel about 11 p. m. and went to sleep; the next thing she remembered was that the lights were on and the officer was "holding a gun on" her; the first time she told anyone about leaving the hotel and getting the heroin was at the trial while she was testifying.

██ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250].) ██ In the present case the officers had received information from a reliable informant, namely, a police sergeant, that: (1) A "theft from an automobile" had been committed at a certain parking lot on July 7. (2) A burglary had been committed at an appliance store on Sunset Boulevard on July 7. (3) A 1951 green Buick had been seen on said parking lot where and when the theft on that lot had occurred. (4) A 1951 green Buick, very similar to the Buick first mentioned, in which a man and woman were riding, had been seen leaving the scene of the burglary at the appliance store. The officers obtained from records of the Department of Motor Vehicles further reliable information that the 1951 Buick, bearing said license number, was registered in the name of Paul L. Allen. They also had reliable information from the police records that a Paul Leroy Allen had been arrested for burglary, narcotics, and armed robbery, and that on one occasion he and Ann Shirley Allen (Miller) had been arrested on a narcotics charge. The officers saw a 1951 green Buick, bearing said license number, which was parked near the Strand Hotel. They also obtained information from the hotel clerk that said persons, whose pictures were in the police records, were living

in room 231 of that hotel. They were registered there under assumed names.

■ "Evidence of information from a reliable informer is sufficient to sustain a finding that an arrest, search, and seizure were made with reasonable cause." (*People* v. *Prewitt*, 52 Cal.2d 330, 337 [341 P.2d 1]; *People* v. *Herman*, 163 Cal. App.2d 821, 825 [329 P.2d 989].)

■ The officers were justified, of course, in believing that theft had been committed at the parking lot and that burglary had been committed at the appliance store on July 7, and that a 1951 green Buick was near the scene of both crimes. The Buick which was leaving the scene of the theft was registered in the name of Paul L. Allen. The Buick which had been parked on the street near the scene of the burglary was very similar in appearance to the Buick which was near the scene of the theft. A man and woman were in the Buick which was near the place of the burglary. A person, whose name was the same as the name of the registered owner of the first mentioned Buick, had been arrested on several criminal charges which included burglary and robbery, and that person had been arrested with Ann Shirley Allen on a narcotics charge. A 1951 green Buick which was registered in the name of Paul L. Allen was parked near the hotel where Paul Leroy Allen and Ann Shirley Allen, referred to in the criminal records, were registered under the assumed names of Mr. and Mrs. Robert Monroe.

The facts known to the officers and the circumstances as appearing to them upon reliable information, when considered as a combination of known facts and reliable information, were sufficient to justify the trial judge's implied finding that there was probable cause for entering the room and arresting the defendants. The arrest was lawful. ■ A search which is incident to a lawful arrest is valid. (*People* v. *Winston*, 46 Cal.2d 157, 162 [293 P.2d 40].) The search herein was lawful.

■ Appellant contends further that the court erred in receiving evidence as to extrajudicial statements of appellant, for the reason the corpus delicti was not established. He argues to the effect that there was no evidence that he had possession of the heroin, or that he had knowledge that it was in the room. ■ Knowledge of the presence of the heroin may be proved by circumstantial evidence. ■ Evidence that a person uses narcotics and has hypodermic needle marks on his arms may be considered as a circumstance indicating possession of narcotics. (See *People* v. *Gin Hauk Jue*, 93 Cal.App.2d 72, 74

[208 P.2d 717].) ▮▮▮ In the present case there was testimony on behalf of the prosecution that hypodermic needle marks and fresh needle-mark scabs were on appellant's "left arm at the juncture of the elbow inside, and on the back of the left hand and wrist." Officer Glazer testified that when he saw appellant (about six hours after the arrest) the appellant was quite ill. Officer Cook, who was qualified as an expert witness on the subject of narcotics, testified that when he saw the appellant (three days after the arrest) the appellant appeared to be sick; and that in the opinion of the witness the appellant was then suffering from withdrawal of narcotics. The evidence was sufficient to support a finding that appellant had knowledge of the presence of the heroin and that he was in possession of it. The court did not err in receiving evidence as to extrajudicial statements of appellant.

Appellant also contends that the court erred in receiving evidence as to the conduct of appellant at the time he was interviewed by Officer Glazer. He argues that the corpus delicti was not established and therefore such evidence should not have been received. The discussion in the next preceding paragraph regarding proof of the corpus delicti is applicable here. The court did not err in receiving the evidence as to such conduct of appellant.

The evidence was sufficient to support the judgment. No finding was made as to the alleged prior convictions.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.