[Crim. No. 2806.    Fourth Dist., Div. One.    Aug. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD RAYMOND HAYNES, Defendant and Appellant.

Adrian D. Vining, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin A. Bauer, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant and a codefendant Marguerite Anderson were charged with possession of marijuana for sale, viz., a violation of Health and Safety Code section 11530.5; were convicted by verdict of a jury; moved for a new trial, which was denied; and defendant alone appeals, contending the judgment should be reversed because (1) the evidence is insufficient to sustain the verdict; (2) statements by the district attorney constituted prejudicial misconduct; and (3) the court erred in refusing an instruction requested by him.

The sufficiency of the evidence to sustain a verdict is determinable on appeal under the well-settled rule stated in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], as follows: ''The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon

the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' In this regard the court said in *People* v. *Redrick,* 55 Cal.2d 282, 290 [10 Cal.Rptr. 823, 359 P.2d 255], a narcotics possession case: ''The existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it 'be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' ''

On May 22, 1966, at 8 p.m., narcotics agents and police officers, with a warrant authorizing the search of a residence identified as 4364 ''G'' Street, in San Diego, and of the person of defendant, took a reconnaissance position near the residence; remained there for approximately two and one-half hours; shortly after 10 p.m. saw Marguerite Anderson leave the residence and walk in a westerly direction toward Market Street; within 5 or 10 minutes saw an automobile come west on ''G'' Street and park in front of the residence; saw a male and a female person get out of the automobile, the female appearing to be the same person who previously had left the residence and the male being a person of the same general description as the defendant; saw both of them enter the residence from which, shortly thereafter, the male person left, went to the car in which a third person was acting as driver, leaned inside, turned and walked back to the residence, opened the door and hollered ''Lock the door,'' then returned to the car and left. At about 10:30 p.m. the officers left the area; returned at 1:15 a.m. on the following morning, i.e.,

May 23d; and proceeded to execute the search warrant. One of the officers knocked on the door of the residence and "hollered very loudly, 'Police Officers. Open up. We have a search warrant.' "; received no response; about 30 seconds later again "beat rather heavily on the side of the door," announced the presence of the officers and their possession of a search warrant; then heard sounds inside of "rapid movement"; and thereupon, together with the other officers, forced his way into the house. Defendant and Marguerite Anderson were in a "TV room." The former, standing by a chair, was clothed but did not have on shoes. The latter was lying on a couch, awake, and was wearing a robe and covered by a blanket. Also in the house were her five children.

Upon searching the house, the officers found in the "TV room" a single marijuana seed on the floor near the place where defendant had been standing; a waxed sandwich bag containing marijuana, in the pocket of a woman's sweater in a closet adjoining the bedroom; a purse containing marijuana debris; a pair of man's shoes, and a man's suit with a cleaning tag attached bearing the notation: "J. Haynes, 5/16/66, 4364 'G' Street," in the same closet; on top of a dresser in the bedroom an empty package of Zig-Zag papers; and in the kitchen, unused waxed sandwich bags similar to the one found in the woman's sweater.

In searching under the house the officers found 37 waxed paper bags containing marijuana; two kilo bricks of marijuana worth approximately $1,100; brown paper bags, one of which contained a Safeway shopping receipt dated May 19, 1966; blue cellophane paper; and green wrapping paper upon which was a sticky substance. The waxed paper bags of marijuana were found near the crawl hole used as an entryway under the house. The bags were similar to the waxed sandwich bags found in the kitchen. Marijuana is packaged in this manner for sale. The kilo bricks were found at a place more distant from the entryway. Near them was the green wrapping paper containing a sticky substance. When marijuana is wrapped for sale, a substance, ordinarily of a sticky nature, is rubbed on the paper to "kill" the marijuana odor.

Defendant had $109 in his possession; was wearing a new pair of pants, which he had purchased about a week before for $19; and said he was unemployed. Traces of marijuana were found in the two pockets of his shirt; in the two front pockets of his pants; and also in the two rear pockets of his pants. A

package of Zig-Zag papers was found in the left rear pocket of his pants.

■ To establish possession of narcotics it must be shown the defendant exercised dominion and control over the drug with knowledge of its presence and narcotic character. (*People v. Redrick, supra,* 55 Cal.2d 282, 285.) Substantial proof of these elements may be supplied by circumstantial evidence alone; does not require a showing of exclusive or physical possession; and may be established by an inferential showing of joint and constructive possession. (*People v. White,* 50 Cal. 2d 428, 431 [325 P.2d 985]; *People v. Roberts,* 228 Cal.App.2d 722, 726-727 [39 Cal.Rptr. 843].) Factors supporting an inference of joint and constructive possession are joint occupancy of premises where the narcotic is located (*People v. Poe,* 164 Cal.App.2d 514, 516 [330 P.2d 681]; *People v. MacArthur,* 126 Cal.App.2d 232, 236 [271 P.2d 914]; *People v. Williams,* 121 Cal.App.2d 679, 681 [263 P.2d 853]); recent association with the narcotic by use or otherwise, which may be inferred from the presence of narcotic debris in the clothing of the accused (*People v. Redrick, supra,* 55 Cal.2d 282, 287; *People v. Rogers,* 207 Cal.App.2d 261, 268 [24 Cal.Rptr. 341]; *People v. Allen,* 196 Cal.App.2d 655, 660 [16 Cal.Rptr. 869]; *People v. Anders,* 167 Cal.App.2d 65. 67. 68 [333 P.2d 854]; *People v. Robarge,* 151 Cal.App.2d 660. 668 [312 P.2d 70]); knowledge of the presence of the narcotic on the premises, which likewise may be inferred from the presence of narcotic debris in the clothing of an accused who jointly occupied the premises where the narcotic was located (*People v. Anders, supra,* 167 Cal.App.2d 65. 67. 68; gen. see *People v. Cahill,* 163 Cal.App.2d 15, 18. 20-21 [328 P.2d 995]); circumstances indicating the accused may have been engaged in the sale of narcotics, such as the unexplained possession of a substantial amount of money by an unemployed person (*People v. Magdaleno,* 158 Cal.App.2d 48, 52 [322 P.2d 89]); and conduct evidencing a guilty conscience. (*People v. Redrick, supra,* 55 Cal.2d 282, 287, 288; *People v. Roberts, supra,* 228 Cal.App.2d 722, 729; *People v. Magdaleno, supra,* 158 Cal. App.2d 48, 52; see also *People v. Ortiz,* 185 Cal.App.2d 622, 624 [8 Cal.Rptr. 494].)

■ The evidence in the case at bench supports reasonably deducible inferences that the defendant. with his codefendant Marguerite Anderson, jointly occupied the premises where the marijuana was found; had knowledge of the presence of that

marijuana and its narcotic character; had access thereto; and had joint control thereof.

It may be inferred the name and address appearing on the cleaning slip attached to the suit in the closet was given the cleaning establishment by defendant; that this address identified the place where he resided; that he was present on the night in question as a joint occupant of the premises with his codefendant; and that he was not a mere visitor. Corroborating this conclusion is the fact, inferentially supported by the evidence that he had removed his shoes and placed them in the closet. Although the defense successfully blocked the introduction in evidence of statements made by the defendant to the officers respecting the ownership of the shoes and the suit in the closet, it may be inferred they belonged to him. The tag on the suit bore his name; there was no evidence of any other man's shoes in the house; and and the defendant was not wearing shoes.

The fact Zig-Zag papers, which are used to make marijuana cigarettes, and marijuana debris were found in defendant's pockets, supports the conclusion he was a marijuana user. It is significant the debris was found not just in one pocket but in all of the pockets of his shirt and pants. This fact, together with the fact he was unemployed but had in his possession $109 and recently had purchased a pair of pants costing $19, together with the fact inferentially supported by the evidence that on the night in question he was contacted by Marguerite Anderson, accompanied her to the residence and then left in an automobile driven by a third person, after which he returned to the residence. support the conclusion he was trafficking in marijuana; and was using the residence at 4364 "G" Street as a base of operations. Reasonably deducible from the evidence is the inference the marijuana debris in defendant's pockets came from packages of marijuana he had delivered, or from the handling of bulk marijuana in the process of packaging.

The evidence also supports the inference defendant heard the announcement of the officers before entry; refused to open the door as requested; and engaged in some movement indicative of an effort to hide or destroy evidence. This incident supports an inference of a consciousness of guilt. (Cf. *People* v. *Hood*, 150 Cal.App.2d 197, 201 [309 P.2d 856].)

In *People* v. *Redrick, supra,* 55 Cal.2d 282, 287, the court said: "As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which

will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control.''

Cases involving a consideration of factors present in the case at bench, although not parallel in all details, which furnish precedent for the conclusion the evidence under review supports the verdict, in addition to those heretofore cited, are *People* v. *Hamilton*, 223 Cal.App.2d 542, 544 [85 Cal.Rptr. 812]—where the accused claimed he was only a visitor at the premises where the narcotic was found, *People* v. *Dominguez*, 191 Cal.App.2d 704, 705-707 [12 Cal.Rptr. 910], *People* v. *Hurst*, 183 Cal.App.2d 379, 387 [6 Cal.Rptr. 483]—where the narcotics were found under a house occupied by defendant, and *People* v. *Bretado*, 178 Cal.App.2d 465, 468-469 [3 Cal. Rptr. 216], *People* v. *Bassett*, 68 Cal.App.2d 241, 247 [156 P.2d 457]—where the narcotics were found in an adjoining light well.

Defendant relies upon the rule that mere presence in or mere opportunity of access to the place where marijuana is found is not sufficient to prove possession. (See *People* v. *Redrick, supra,* 55 Cal.2d 282, 285; *People* v. *Roberts, supra,* 228 Cal.App.2d 722, 727-729.) However, the case at bench is not one of ''mere presence'' or ''mere opportunity of access''; additional factors exist.

Considering the evidence in the light most favorable to the verdict, as we are required to do, it adequately supports the verdict.

■ In the course of an opening statement preliminary to the introduction of evidence, the district attorney said: ''At some point during the course of the trial the testimony will show that Mr. Haynes and Miss Anderson have had several children together, just to show their relationship between the two defendants.'' The prosecution rested its case without any offer of proof respecting this matter. The defendants rested without introducing any evidence. Defendants did not object to the statement of the district attorney at the time it was made, but through their counsel did refer to it in their arguments to the jury, asserting lack of any proof upon the subject showed the purpose of the district attorney in making the statement was to prejudice the jury against them. This was an effort to capitalize upon the failure of the prosecution to prove its assertion. No request was made for an instruction to the jury to disregard the remark of the district attorney in

considering the case. The fact, if it were a fact, defendant and Anderson "had several children together" would have been relevant to the issue of the relationship between them, the occupancy of the premises, and defendant's participation in the offense with which he was charged. Absent proof of bad faith, the failure to introduce evidence in support of a relevant fact asserted to be such by the district attorney in his opening statement is not misconduct. (*People* v. *Cooley,* 211 Cal.App.2d 173, 215-216 [27 Cal.Rptr. 543].) On their motion for new trial the defendant and codefendant asserted the action of the district attorney in the premises constituted prejudicial misconduct. The trial court found there was no prejudice or bad faith, and denied the motions. These findings are supported by the record. It would appear to have been the hope of the district attorney to solicit "the testimony" to which he referred through cross-examination of the defendants. Any error in assuming they would testify was one of judgment and not bad faith.

When the defendants rested without offering any evidence, the district attorney indicated his surprise, and at his request a recess was taken to permit a discussion with the court regarding instructions. Upon resumption of the trial the district attorney proceeded with his opening argument in this manner: "Well, this is the time when the prosecution has the opportunity whether they are, shall we say, prepared for it or not, in summing up as to what we think the evidence in this case has shown. In this matter of preparation let me say that, of course, the case has been somewhat shorter than perhaps I anticipated because we had no testimonial evidence as far as the defendant is concerned. But remember, of course, the defendants do not have to take the stand in their own behalf. It is up to the prosecution to prove their case to you." The defendant contends the aforesaid statement constituted a comment upon failure of the defendants to testify in their own behalf, violative of the rule stated in *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. ■ The reference of the district attorney to the fact the defendants did not testify must be considered in relation to his offered excuse for lack of preparation and readiness to proceed with the argument. No misconduct occurred.

■ Defendant requested, and the court refused to give, an instruction to the effect a conviction could not be based upon possession of marijuana debris alone, based on the principles stated in *People* v. *Leal,* 64 Cal.2d 504 [50 Cal.Rptr.

777, 413 P.2d 665], and *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671]. The court adequately covered the subject in other instructions. No error occurred in the refusal.

The judgment is affirmed.

Brown (Gerald), P. J., concurred.

LAZAR, J., pro tem.*—I dissent from the opinion of the court insofar as it undertakes to justify inferences of knowledge, dominion and control necessary to a finding of possession of the marijuana found under the house and would reverse the judgment of conviction.

Preliminarily, I agree with the holding of the majority opinion that there was no error in refusal of the instruction requested by the defendant. I also agree that the defendant did not make out a case of prejudicial misconduct in the technical sense with respect to the remarks of the district attorney in his opening statement to the jury. On the other hand, under the close circumstances of this case I consider the statement unjustified and prejudicial and deserving of some comment.

The remark of the district attorney upon opening statement was: "At some point during the course of the trial the testimony will show that Mr. Haynes and Miss Anderson have had several children together, just to show their relationship between the two defendants."

In the framework of the minimum evidence produced against defendant Haynes, the statement was highly damaging in suggesting a meretricious relationship between the parties and a willingness upon the part of Haynes to ignore prevailing social standards. The statement and anticipatory evidence would have relevance only to establish that defendant was in a husband-like relationship to his codefendant which would help in providing the inferences to prove possession. If this purpose were not served the relationship between the parties was immaterial. The statement as made focused the attention of the jury upon implied immoral conduct of the parties, not the inferences to be drawn from it in support of the People's case.

It is correct that defendant argued to the jury the People's failure to offer evidence in support of the statement and made no assignment of error until the argument on motion for new trial. With no evidence before it on the question of good or

---

*Assigned by the Chairman of the Judicial Council.

bad faith (the trial district attorney was not present on the new trial argument), the trial court found no intentional bad faith and said of the district attorney: "It was his *hope* that that could be proved, or would be proved, and he didn't know how the case would develop." [Italics supplied.] I agree with defendant that this particular area was one in which the district attorney should be held to know whether he would be able to provide evidence in support of his statement. It does not appear why evidence was not produced in support of the statement made to the jury.

As stated in *People* v. *Carr*, 163 Cal.App.2d 568, 575 [329 P.2d 746]: "The purpose of the opening statement of the prosecuting attorney is to outline the state's evidence against the one accused of crime and to inform the jury what the People *intend to prove*. Generally the failure to make such proof during the trial does not indicate prejudice, particularly in the absence of showing of bad faith. However it is the substance and implication of a statement or the effect of an act which really define what the law recognizes as prejudicial misconduct. [Citation.] Whereas in the case at bar the unwarranted statement might not alone have prejudiced the defendants, the cumulative effect on the jury of this and other unjustified comments of the deputy district attorney justifies a contrary conclusion particularly in view of the state of the evidence." [Italics supplied.]

The crucial question, however, is whether the jury's implied findings of the elements essential to proof of possession of marijuana for purposes of sale are supported by sufficient evidence. In the instant case substantial evidence must be found in inferences reasonably drawn from the limited direct facts present in the record.

The facts recited in the majority opinion are more lengthy than significant. In particular the facts up to the entry of the police officers would appear of no incriminatory value whatsoever. The haste with which the entry was effected precludes a valid inference of refusal, even of opportunity, to open the door; the testimony of "rapid movement" is worthless. Rapid movement of what? A door? Of air? A tricycle? A child? There is no such thing as "rapid movement" in the abstract, yet "the sound of movement" is the sole evidentiary description given to the jury. From whence, then, a valid inference that defendant "engaged in some movement indicative of an effort to hide or destroy evidence?" By the same token the evidence provides no support for an inference

of a consciousness of guilt. The factual situation and principles involved in *People* v. *Hood,* 150 Cal.App.2d 197 [309 P.2d 856], cited in the opinion of the court, bear no relation to the question of valid or invalid inferences in the framework of testimony relating to the forcible entry into the house.

The existence of joint and constructive possession of the commercial quantities of marijuana found beneath the house is a key requirement to finding defendant guilty. Essential to this factor is a showing of joint occupancy of the house. *People* v. *Poe,* 164 Cal.App.2d 514 [330 P.2d 681], involved two people in a hotel room, with capsules of heroin on a dresser, the defendant standing nearby under the influence of narcotics and having "in effect admitted to the officers that she was in possession of the narcotics." (P. 516) *People* v. *MacArthur,* 126 Cal.App.2d 232 [271 P.2d 914], was concerned with a situation of a man and woman living together in an apartment "for some time" and the narcotic upon which the prosecution was based was found in the apartment with a number of highly incriminatory circumstances, all of which was held sufficient to warrant an inference of joint possession of the heroin in the codefendant's vanity box. *People* v. *Williams,* 121 Cal.App.2d 679 [263 P.2d 853], involved joint occupancy of a small hotel room for several days with the narcotic in plain sight on a table.[1]

A succinct statement of the rules to be taken into account in relation to a charge of unlawful possession of narcotics is set forth in *People* v. *Roberts,* 228 Cal.App.2d 722, at pages 726-727 [39 Cal.Rptr. 843] : "It is a well settled proposition of law that in a prosecution for unlawful possession of narcotics the People must prove that the accused exercised dominion and control over the drug with knowledge both of its presence and of its narcotic character. [Citations.] These elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citations.] Though proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession, the fact that other persons had access to the premises in which the narcotic was found does not negative a finding of joint possession and control. [Citations.] Exclusive possession of the premises is not required, nor is physical possession of the drug. [Citation.] Constructive possession is

---

[1]No case has been disclosed in which constructive possession based on joint occupancy has been approved under conditions as physically remote as those in this case.

sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction. [Citations.] However, 'Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt.' [Citation.]''

In *People* v. *Redrick*, 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255], the court made summary reference to a number of cases in the courts of appeal in which possession or non-possession had been ruled, commenting, as between the two lists of cases: ''As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control.'' [P. 287.]

*People* v. *Stanford*, 176 Cal.App.2d 388, in a situation bearing some factual relation to this case, sets forth the rule, at page 390 [1 Cal.Rptr. 425], in these words: ''To justify a conviction of unlawful possession of narcotics, the prosecution must prove actual or constructive possession of the contraband by the accused and knowledge of its presence and narcotic character. [Citations.] These essential facts may, of course, be established by circumstantial evidence. [Citation.]''

The same case correlates the requisite possession with the necessity of proving dominion and control. ''. . . Coleman's presence in the bathroom neither establishes his possession of the contraband nor justifies an inference to that effect. It does not show that the narcotics in question were under his dominion and control.'' [P. 391.]

*People* v. *Tabizon*, 166 Cal.App.2d 271 [332 P.2d 697], and *People* v. *Hancock*, 156 Cal.App.2d 305 [319 P.2d 731], are referred to in *Stanford, supra,* as instances in which mere presence where narcotics were present was insufficient to establish possession. Each of those cases was stronger for the People than *Stanford* or the case at bench.

The majority opinion cites *People* v. *Anders,* 167 Cal.App. 2d 65 [333 P.2d 854], in support of the proposition that knowledge of the presence of narcotics on the premises may be inferred from the presence of narcotics debris in the clothing of a joint occupant. The statement in *Anders, supra,* at page 68, is that: ''It is also the rule that the actual finding of the narcotics in Anders' clothing and in the automobile owned by him was sufficient to warrant an inference of knowledge

thereof. on his part." That is not the equivalent of saying that narcotics debris found in the clothes of a man who on the occasion of arrest is present in a "TV room" in a home in which the evidence is only of transient presence justifies an inference of knowledge of a commercial quantity of marijuana under the house and accessible only by an outside "crawl hole." *People* v. *Cahill*, 163 Cal.App.2d 15 [328 P.2d 995], is equally inapplicable factually as it involved a manila sack of marijuana found under the bed occupied by the defendant. *People* v. *Magdaleno*, 158 Cal.App.2d 48 [322 P.2d 89], cited to the validity of an inference of selling narcotics because of money in the possession of an unemployed accused likewise involved facts unhelpful as a guide to the present case.

Challenging the sufficiency of the evidence places one in the always difficult position of establishing a negative. It is important to keep in mind, however, that the prosecution of the defendant is based upon the commercial quantity of marijuana found beneath the house, as recognized by the district attorney's statement to the court that "obviously the officers wouldn't have arrested them until they found this stuff underneath the house." No fact is present which would justify an inference of defendant's knowledge of the marijuana beneath the house or of his right of dominion and control over it. "[S]uspicion is not evidence; it merely raises a possibility and that is not sufficient basis for an inference of fact. [Citing cases.]" (*People* v. *Tatge*, 219 Cal.App.2d 430, 435 [33 Cal.Rptr. 323].) See *People* v. *Tidmore*, 218 Cal.App.2d 716, 720 [32 Cal.Rptr. 444].

The evidence supports inferences that the defendant and codefendant were friends, even close friends; that defendant felt free to use the address of the house as a reference point (the address on the cleaning tag); that defendant had handled marijuana; that defendant felt concern for persons or property, or both, *in* the house; nothing more.

The comparative insufficiency of the evidence may be tested by matters on which it was silent: defendant's physical and nervous state at the time of entry; who owned or rented the house; how frequently defendant was about the premises; where defendant kept his extra clothing and other personal belongings; where defendant maintained residence; parentage of the children; whether defendant was, within an appropriate period, the only visitor or one of many. None of these matters, which might have supported the inferences to incriminate defendant, was touched upon.

One may concede the basic propriety and general application of the principles stated in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], cited in the majority opinion; nevertheless: " 'Implicit in our duty to determine the legal sufficiency of evidence to sustain a verdict is our obligation, in a proper case, to appraise the sufficiency and effect of admitted or otherwise indubitably established facts as precluding or overcoming, as a matter of law, inconsistent inferences sought to be derived from weak and inconclusive sources.'' [Citing cases.] '' (*People* v. *Hall,* 62 Cal.2d 104, 110 [41 Cal.Rptr. 284 396 P.2d 700].)

In my opinion the following language from *People* v. *Alkow,* 97 CalApp.2d 797, 802-803 [218 P.2d 607], is keenly apposite to the circumstances of the instant case: ''Evidence which merely creates a strong suspicion of the guilt of the accused does not shift the burden of proof and impose upon him the duty of overcoming the suspicion. . . . Too much was left to speculation and conjecture on the part of the jury when satisfactory proof was available. As a consequence we are not only faced with a difficult problem concerning a particular case but also a grave question as to our duty as a reviewing court in the establishment of a precedent. The review of a judgment in a criminal case is a heavy responsibility at best, and we are unwilling to overlook trial practices which create serious problems on appeal which could easily have been avoided.

''It is the right of every reviewing court to insist that in the trial of a criminal case the evidence of the People should be the best that is obtainable. The limitation of jurisdiction on appeal to questions of law implies that the facts which are determinative of the question of guilt will be as firmly established as possible in the trial court and that reliance will not be placed upon the ability of jurors to choose between conflicting inferences when evidence is available to prove material facts. Therefore, as far as possible, uncertainty should be removed from the case. When presentation of the evidence is unnecessarily incomplete, and the crucial facts of the case are left to inference. the tendency will be to relax the requirement that guilt must be established beyond a reasonable doubt and place emphasis upon mere suspicion. We have such a record in the present case. The deficiencies of the evidence of the People would have required the jurors to determine upon the basis of probabilities whether a disclosure of further facts would have tended to prove guilt or innocence. We do not believe the

evidence was legally sufficient to establish guilt or to warrant the jury in determining beyond a reasonable doubt, by inference from the evidence, that the essential facts which the People did not undertake to put in evidence would have cured the insufficiency.''

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1967. Peters, J., was of the opinion that the petition should be granted.