[Crim. No. 4515. First Dist., Div. One. July 28, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. HOWARD ROBERTS, Defendant and Appellant.

Benjamin M. Davis for Defendant and Appellant.

Stanley Mosk, Attorney General, Robert R. Granucci and Henry B. Lasky, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment of conviction, after jury trial, of violation of section 11500, Health and Safety Code (possession of heroin).[1]

The sole question presented is the sufficiency of the evidence.

## RECORD.

On March 29, 1963, at approximately 8:30 p.m. a narcotics agent was situated at California and Bancroft Streets in Berkeley, California. He had the house at 2249 Spaulding Street under surveillance. He and other officers were waiting for one Harrington who lived there, to appear. They were going to serve a search warrant "on his person." An automobile arrived and parked on California Street south of Bancroft about a block from the house, although there were empty parking spaces in front of the house. It appeared to the agent that it was occupied by two men. The driver of the car, one Perry, emerged and entered the rear of 2249 Spaulding Street. A few minutes later, he emerged from the house, returned to the vehicle and drove off followed by the agent. The driver of the car, when walking to and from the house, kept looking over his shoulder and around the area.

The narcotics agent continued following the car intending to talk to the occupants at the first opportunity as to the reason for the visit of one of them to the house the officer had under surveillance. He noticed a third man, subsequently shown to be defendant, sit up in the back seat. Sergeant Plummer of the Berkeley Police Department, who was in a separate car, noticed the agent's car and joined in the pursuit.

---

[1]Defendant also appeals from order denying his motion for new trial. As such order is not appealable (Pen. Code, § 1237) the appeal will have to be dismissed. The order is reviewable on the appeal from the judgment.

Convicted with defendant were Chester A. Perry, Jr., and Maurice G. Mobley, neither of whom appeals. Defendant, as used in this opinion, refers to Howard Roberts.

When Sergeant Plummer was discovered following the suspect car occupied by the three defendants Roberts moved around in the rear seat looking at Plummer, then Mobley in the front seat turned around and looked at Plummer and talked to the driver. Then there was a great deal of commotion inside the suspect vehicle. Their car then pulled into a service station and the narcotics agent followed, pulling his car in front of the suspect car at right angles. While the three men were looking behind them at Sergeant Plummer's car, and after the narcotics agent had gotten out of his car, the suspect car moved slowly forward, colliding with the car of the agent. All three men were fidgeting noticeably as the agent approached their car on the driver's side. Sergeant Plummer approached from the other side and observed that the three men were jumping back and forth inside their car, " . . . they were like jumping beans, back and forth," and the man on the passenger side, ultimately shown to be defendant Mobley, locked the car door.

Looking in from outside the narcotics agent observed a small white paper package on the front seat of the vehicle. The shape of the package indicated it to be a "bindle" of the type used to carry narcotics. The three men emerged from the car, but defendant needed assistance. He moved slowly and deliberately, had a bandage around his head, and his eyes were bloodshot. He stated he had been in an accident about a week before. The three men were arrested. Later at the police station defendant stated that he had been in a hospital and had examinations, a blood test and some injections. An examination of defendant showed him to have numerous scabs on both arms from the inner elbow area to the wrists, both fresh and old. Defendant admitted the marks on his arms were needle marks. Defendant's right eye was examined and found to be pin-pointed and fixed (did not react to light), but the narcotics agent admitted that the examination consisted of shining a light into the eye quickly and that the examination was not really a good determination. The bindle which the narcotics agent had recovered contained .05 grams of heroin, about a "$10.00 paper."

A San Francisco police officer testified that defendant in December 1961 had admitted to him that he previously used narcotics and heroin. There is no record of any prior conviction on any charge. No evidence was offered against defendant of any past association or knowledge of Harrington, a known user, whose house had been under surveillance.

There were no needle marks on defendant Perry's arms, but his eyes appeared pin-pointed and fixed. He denied knowledge of the presence of the bindle. He was later tested and no evidence of narcotics was found. Mobley's arms indicated scabs less than a week old. Defendant did not testify, nor did Mobley.

Perry, who apparently owned the automobile in which defendant was later riding, testified that he was shooting pool in the Market Street Sport Center. There he met defendant Mobley, who asked him if he knew where Harrington (who was a known narcotic user and who later that evening was found to have fresh needle marks on his arms) lived. On Perry stating that he did, Mobley asked Perry to drive him there. Perry agreed to do so after he finished the game he was playing. Mobley left the Center but returned later with defendant. They then entered Perry's car and proceeded to the place where Harrington lived. Perry there said, "Come on, let's go." Mobley suggested that Perry go and tell Harrington that Mobley was in the car. This Perry did and Harrington said, "I see you guys down the pool hall." Mobley returned and started the car towards the pool hall. It was then that the officers started to follow the car.

WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION FOR UNLAWFUL POSSESSION OF HEROIN? YES.

▇ It is a well settled proposition of law that in a prosecution for unlawful possession of narcotics the People must prove that the accused exercised dominion and control over the drug with knowledge both of its presence and of its narcotic character. (*People* v. *Groom* (1964) 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 449-450 [33 Cal.Rptr. 811]; *People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) ▇ These elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*People* v. *Groom, supra,* at pp. 696-697; *People* v. *Villanueva, supra,* p. 450; *People* v. *Valenzuela* (1959) 174 Cal.App.2d 759, 762 [345 P.2d 270]; *People* v. *Fernandez* (1959) 172 Cal.App.2d 747, 754 [342 P.2d 309].) ▇ Though proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession, the fact that other persons had access to the premises in which the narcotic was found does not negative a finding of joint possession and control. (*People*

v. *Redrick, supra,* at p. 285; *People* v. *Valenzuela, supra,* at p. 762; 2 Witkin, Cal. Crimes, § 690, p. 633.) ■ Exclusive possession of the premises is not required, nor is physical possession of the drug. (*People* v. *Villanueva, supra,* at p. 450.) ■ Constructive possession is sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction. (*People* v. *Toms* (1958) 163 Cal.App.2d 123, 128 [329 P.2d 90]; *People* v. *White* (1958) 50 Cal.2d 428, 431 [325 P.2d 985].) ■ However, ''Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt.'' (*People* v. *Foster* (1953) 115 Cal.App.2d 866, 868 [253 P.2d 50].)

■ Taking the evidence most strongly in favor of the prosecution, it shows that defendant, a narcotics user still under its influence from a recent use, was in the back seat of an automobile in which one of the occupants of the front seat was also an addict. The car stopped about a block away from the home of a person whom the police suspected to be a narcotics peddler. The driver of the car went into the rear entrance of this house, and shortly returned to the car. As the car proceeded down the street it was followed by a car in which there were police officers not in uniform. The car had no indication that it was a police car. When this car was discovered by the occupants of the car in which defendant was riding, defendant sat up, there was some ''commotion'' and the occupants turned and watched the police car. Defendant's car turned into a service station. Its driver and the others were so occupied in observing the police car that they did not see another police car which had entered the station, and defendant's car ran into it. The three men were ''fidgeting'' and ''jumping back and forth'' in their car before the impact. There was a bindle of heroin on the front seat between Mobley and Perry. Defendant's head was bandaged and he apparently needed assistance in getting out of the car. Defendant did not testify to explain his actions.

■ There are numerous cases involving possession of narcotics. The determination of each depends upon the peculiar circumstances of the particular case. ■ As said in *People* v. *Montero* (1962) 200 Cal.App.2d 295, 299 [19 Cal. Rptr. 274]: ''As might be expected, no sharp line can be drawn to distinguish the congeries of fact which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place

to which he had access but not exclusive access and of which he had some control, but not exclusive control.''

There is no case in which the circumstances were exactly similar to those in our case. In most of the cases in which a conviction for possession of narcotics has been upheld where more than one person is present where the narcotic is found, the particular defendant has made an incriminating statement, or one not true, or has acted in such a manner as to indicate knowledge of the presence of the narcotic. No such statements were made by defendant here.

However, there were circumstances from which the jury could reasonably infer knowledge of defendant of the presence of the bindle and hence constructive possession. (It is conceded that if defendant knew of the presence of the bindle he would know of its narcotic character.) Taken alone, none of the circumstances was in itself sufficient to support the conviction, but taken together they were.

The fact that when the occupants of the car, including defendant, saw a car behind them, they became agitated, talking with one another and looking back at the car, and then jumping around in the car, was a suspicious circumstance. Then the fact that defendant was under the influence of a narcotic was another suspicious circumstance. While the officer admitted that his examination and test of defendant was not a good one, it was one from which the jury could infer that defendant had recently used a narcotic.[2] ''Evidence that a person uses narcotics and has hypodermic needle marks on his arms may be considered as a circumstance indicating possession of narcotics.'' (*People* v. *Allen* (1961) 196 Cal.App.2d 655, 660 [16 Cal.Rptr. 869]; *People* v. *Gin Hauk Jue* (1949) 93 Cal.App.2d 72, 74 [208 P.2d 717]; see also *People* v. *Hancock* (1957) 156 Cal.App.2d 305, 309 [319 P.2d 731]; *People* v. *Bagley* (1955) 133 Cal. App.2d 481, 485 [284 P.2d 36].)

The fact that the amount of heroin in the case at bench was small, namely, .05 grams, does not necessarily lead to the conclusion, as contended by defendant, that it was in the possession of only one of the three men in the car.

''[T]he fact that other persons had equal right and facility of access to the premises [the automobile in our case]

[2]The jury were not required to believe the statement of defendant to the officers at the police station that on a prior occasion when at the hospital after his automobile accident he had had a blood test and some hypodermic injections.

does not negative a finding of joint possession and control."
(*People* v. *Valenzuela, supra,* 174 Cal.App.2d at p. 762.)

 Association with Mobley, a narcotics user, his going with him to the home of another user, the fact that he had fresh injection marks on his arms, and gave indication of still being under the influence of narcotics, his own acts in the car, indicating consciousness of guilt coupled with the acts of the others in his presence, including the locking of the door by Mobley, were such that a reasonable inference of guilt could be drawn therefrom, even though an inference of innocence could also be drawn. "A conviction may not be set aside because the evidence is susceptible of two reasonable inferences, one looking to the guilt of the defendant and the other to his innocence." (*People* v. *Green* (1939) 13 Cal.2d 37, 42 [87 P.2d 821]; *People* v. *McFarland* (1962) 209 Cal.App.2d 772, 779 [26 Cal.Rptr. 596].)

 Defendant did not take the stand to explain any of the circumstances surrounding the offense. It is clear that the evidence outlined above and the reasonable inferences therefrom support a conclusion of constructive possession by defendant. It must be borne in mind that actual possession of the narcotic is not required for a conviction. It is sufficient if constructive possession thereof appears. (*People* v. *White* (1958) 50 Cal.2d 428, 431 [325 P.2d 985].) In *People* v. *Gonzales* (1953) 116 Cal.App.2d 843 [254 P.2d 603], both the defendant and his fiancee, who were riding together in an automobile, testified that the heroin and marijuana found on her person at the police station belonged to her. In upholding the defendant's conviction the court said: "Possession may be constructive as well as actual. And it is for the trial court to draw the inference. [Citation.]" (P. 844.)

In *People* v. *Ortiz* (1960) 185 Cal.App.2d 622 [8 Cal.Rptr. 494], the circumstances of the arrest were somewhat similar to those in the instant case. There the defendant Gomez and five other persons were sitting in a parked car. Gomez was seated on the right in the rear seat. Two of the defendants were seated to his left. A plastic bag containing marijuana was resting on the floor between the feet of the defendant Ortiz who sat on the left side of the rear seat. Two marijuana cigarettes were found lying on the street between the car and the curb. Gomez and all the defendants denied knowledge of the presence of narcotics. The court first stated (p. 624), "Appellant seeks to invoke the rule that the mere fact that a defendant was in a car in which marijuana was found or

from which a narcotic was thrown is not sufficient in itself to convict the defendant where there were several persons in the vehicle. It may be granted that appellant's statement of the rule is correct. [Citations.]'' and then said, ''However, in the instant case there is other evidence from which the trial judge could reasonably draw inferences of appellant's constructive possession and his guilty knowledge of the narcotic character of the substance involved. Appellant made two statements to the investigating officers which were admittedly false: . . . '' then pointed out, in effect, that one of the circumstances to be considered was the fact that Gomez had been with the other defendants throughout the evening, plus the fact that the bag was in plain sight on the floor. In our case we have among other circumstances the fact that defendant was with the others during a portion of the evening and that the bindle was in plain sight on the front seat. In *Ortiz* (p. 625) the court quoted from *People* v. *Torres* (1950) 98 Cal.App.2d 189, 193 [219 P.2d 480], as follows: ''In the instant action the marijuana was found on the front seat of the car in which all defendants were riding. The question whether the defendants knowingly had possession of it was a factual question for the trial court to determine. The statute (Health & Saf. Code, § 11160) does not require proof that the accused had the unlawful articles on their persons. The fact that 'possession' of the narcotics was immediate and exclusive and under defendants' dominion and control was sufficiently established by the evidence. Where the circumstances in evidence are such as would reasonably justify an inference of guilt, and the court so found, the fact that an inference of innocence might also just as reasonably have been predicated on such circumstances does not present a question of law reviewable by an appellate court.''

While a defendant's failure to testify may not be used to fill a gap in the prosecution's case, it entitles the jury to ''conclude that the inferences of guilt deducible from the evidence were more probably correct than the inferences of innocence.'' (*People* v. *McFarland, supra,* 209 Cal.App.2d at pp. 779-780; see *People* v. *Davis* (1962) 210 Cal.App.2d 721, 736 [26 Cal.Rptr. 903]; *People* v. *Neely* (1958) 163 Cal. App.2d 289, 315 [329 P.2d 357]; *People* v. *Ashley* (1954) 42 Cal.2d 246, 268 [267 P.2d 271].)

*People* v. *Foster, supra,* 115 Cal.App.2d 866, relied upon by defendant, is distinguishable from the case at bench by a difference in the facts. The defendant Phillips and the two

other defendants were riding in the front seat of an automobile which police officers suspected of having been used in the commission of thefts from other automobiles. Using their red light and siren the officers stopped the automobile. A small packet which proved to be a narcotic user's outfit, including some heroin, was thrown out the right front window. Phillips was seated on that side of the automobile. All three, before trial and on the witness stand, denied any knowledge of the packet or having thrown or seen it thrown from the car. While the officers had seen all three moving about in the car they did not see any of them make a throwing motion. All three defendants were convicted of possession, but the trial court granted a new trial as to the defendant who was driving the car. On the appeal of the other two the reviewing court affirmed the conviction of the defendant other than Phillips, pointing out that the defendant had testified falsely as to certain of the circumstances. As to Phillips the court said: "To infer guilty knowledge in Phillips from the fact, *standing alone,* that he testified that he did not see the package thrown from the car would be to permit a conviction on the wildest sort of surmise and conjecture." (P. 868; italics added.) Differing from the situation in *Foster,* in our case we do not have a single circumstance alone upon which to base a finding of guilt, nor do we have the defendant denying on the stand the incriminating circumstances.

As to *People* v. *Antista* (1954) 129 Cal.App.2d 47 [276 P.2d 177], its inapplicability to the situation in the instant case is shown by the following summing up of the evidence in that case: "We hold that if it is established that one accused of possession returned to his apartment, or to his automobile, and found it occupied by a user of narcotics, and a narcotic was found in it, and if there is no evidence that it was there before that time, the fact of its presence, without any other fact or circumstance of an incriminating nature, is legally insufficient to prove a charge of possession." (P. 53.)

Defendant cites *People* v. *Redrick, supra,* 55 Cal.2d 282, presumably because, although the evidence there was held sufficient to support the defendant's conviction for possession, the court reviews certain decisions of the District Courts of Appeal which are "illustrative of reversals of convictions of unlawful possession. . . . " (P. 285.) It clearly appears from such review that none of those decisions is applicable to the instant case.

In *People* v. *Fernandez, supra,* 172 Cal.App.2d 747, the

defendant ran a dry cleaning shop. Narcotics were found in a suit hanging in the shop waiting to be pressed. The prosecution's theory was that "because of his ownership of the shop defendant was chargeable with possession of the narcotic found on the premises." (P. 754.) There were no other circumstances to connect the defendant with the narcotic and there were circumstances which indicated that he could not have placed the narcotic in the suit.

That *People* v. *Bledsoe* (1946) 75 Cal.App.2d 862 [171 P.2d 950], is not in point, is shown by the court's statement (p. 864) : "Since the undisputed evidence shows that the car in which the drug was found had been used by another in the perpetration of a robbery in another city, that appellant had not used it since it had been returned, that others beside appellant had occupied the car at the time of and immediately following the arrest, the evidence wholly fails to show appellant's knowledge 'of the presence' of the drug to justify a finding of 'knowledge' to satisfy the terms of the statute."

*People* v. *Savage* (1954) 128 Cal.App.2d 123 [274 P.2d 905], is likewise not applicable. There the defendant's conviction of possession was set aside. Defendant was not a user and as said by the court, "there is no legal inference possible here because the defendant paid the rent of the room he was in possession of anything which one of his guests might have brought in." (P. 125.)

The court was correct in denying the motion for new trial. The appeal therefrom is dismissed.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.