[Crim. No. 15042. Second Dist., Div. One. Nov. 12 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY THOMAS GALFUND, Defendant and Appellant.

George Shibley and Luke McKissack for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Galfund and codefendants Usher and Cossairt were charged with possession of heroin (§ 11500, Health & Saf. Code). The cause was submitted on the transcript of the testimony taken at the preliminary hearing; the trial court found Galfund and Cossairt guilty as charged. Usher had a separate trial. Proceedings were suspended and Galfund was granted probation for three years and fined $300; only he appeals from the judgment. His purported appeal from the sentence and order denying motion for new trial is dismissed.

On the basis of information received by Officer Morgan, assigned to Narcotics Detail and an expert on narcotics and narcotic paraphernalia, from the owner of a single story motel-type apartment that Usher, known to the officers to be a user of narcotics, lived there and several people were coming and going from the building, he and Officer Castillo went to the apartment around 10:30 p.m. on July 20, 1967, to investigate. They also had information that Usher was a seller of narcotics. With the permission of the resident of an adjacent building, the officers used the yard next door where they watched Usher's apartment. They had an unobstructed view into the apartment through a window and could easily hear conversations in the room. They were stationed behind a fence only 3 feet from the window. When Officer Morgan first looked into the window the venetian blinds were open; later Usher closed the blinds but an unobstructed view of the desk area inside the room remained. By standing on a stool the officers could look through the blinds into the interior of the room which was well lighted. At first Officer Morgan saw only Usher; then he saw another person join Usher. He heard Usher ask him if he had any stuff, to which he replied that he had only ''three halves yet'' and had to sell it all, not even leaving a pinch but he would be there later for a fix and would give him a taste at that time.

The officers continued their stakeout and several hours later, around 1 a.m. on July 21, 1967, Officer Morgan observed defendant and Cossairt come into the room. He heard Usher ''ask them if they had any stuff and Mr. Cossairt said, 'No, we'll have to go and score.' Galfund and Cossairt then left there.'' Within the hour defendant and Cossairt reentered the Usher apartment; Cossairt walked directly to the desk area which was right under and in front of the window through which the officers were observing, and said, ''Nobody deals like they used to.'' He then placed a toy balloon on a newspaper and cut it open. The officer saw a narcotic outfit

consisting of an eyedropper with the needle attached and a spoon. Cossairt put a small amount of the powder contained in the cut balloon on the newspaper into a spoon, drew water out of a coffee cup with an eyedropper and added it to the spoon, lit a matchbook cover and commenced cooking the mixture, placed a piece of cotton in the spoon and drew the liquid into the eyedropper on which he placed a needle, knotted a necktie around his arm and inserted the needle into the vein of his arm. During this time defendant and Usher were around the desk. While Cossairt was injecting himself, Officers Castillo, Garcot and Hamilton made a forced entry; Officer Morgan remained at the window and saw Cossairt return the needle to the desk. He did not see the equipment used by Cossairt in the physical possession of defendant, was not able to identify defendant's voice and after Cossairt and defendant returned could not see "who was saying what."

The trial judge excluded from evidence certain items (balloon, needle, spoon and eyedropper used by Cossairt, the white powder remaining on the newspaper and the results of a chemical analysis of the powder. [heroin] made by a chemist) and certain of Officer Morgan's testimony as to the examination he made of defendant after entry (defendant had constricted watery eyes, droopy eyelids, slow and retarded body movements and fresh needle punctures and failed to react to light) and his belief that defendant was under the influence of an opiate, because it was the opinion of the trial judge that the seizure of the items and the examination by the officer followed a forced entry in violation of section 844, Penal Code.

Appellant contends "that proof of heroin possession requires chemical analysis of the alleged narcotic and that trained observations of narcotic officers will not suffice to ascribe the narcotic character to the substance." He argues that the trial judge committed error in predicating a finding of guilt on the observations of Officer Morgan without a supplemental chemical analysis.

Ordinarily the narcotic character of a substance is proved by a trained expert who has made a chemical analysis thereof. Here there is no such proof because both the powder and its analysis were excluded from evidence. This, however, is not fatal to the People's case for the corpus delicti may be established by circumstantial evidence or by inference. (*People v. Chrisman*, 256 Cal.App.2d 425, 431 [64 Cal.Rptr. 733]; *People v. Winston*, 46 Cal.2d 151, 156 [293 P.2d 40]; *People v. Marinos*, 260 Cal.App.2d 735, 738 [67 Cal.Rptr.

452]; *People* v. *Candalaria,* 121 Cal.App.2d 686, 689 [264 P.2d 71]; *People* v. *Ihm,* 247 Cal.App.2d 388, 392 [55 Cal. Rptr. 599].)

Here the circumstantial evidence and inference reasonably deducible therefrom suffice to prove the narcotic nature of the powder observed by Officer Morgan on the newspaper. Morgan, a narcotic officer, was an expert on narcotics and narcotic paraphernalia; he heard the conversations taking place in the room and the terms used therein which are common usage among users, i.e., "stuff" (heroin, "pinch (small fix or illegal injection of heroin), "halves" (half ounce quantity of heroin), "taste" (small injection of heroin), "score" (procure heroin) and "deal" (sell narcotics). In addition, Cossairt's actions in the room in the presence of defendant, observed by the officer, are indicative of the presence of heroin on the newspaper—Cossairt placed a toy balloon on the newspaper and cut it open, from the powder in the balloon he placed a small amount in a spoon, added water with an eyedropper, mixed the contents and heated it, then placed cotton in the spoon, drew liquid into an eyedropper, placed a needle on the eyedropper and inserted it in a vein in his arm which he had tied with a necktie for the purpose of raising the vein. We conclude that the trial judge correctly determined from the conversations in Usher's apartment and Cossairt's activities that the powder on the newspaper was heroin.[1] We will not disturb the trial court's finding. *People* v. *McChristian,* 245 Cal.App.2d 891 [54 Cal.Rptr. 324], does not hold, as urged by appellant, that proof of heroin possession requires chemical analysis and that trained observations of narcotic officers will not suffice. But under the facts of that case it does hold that "The opinion testimony of the officers, based upon their observation of the *outward* appearance of the balloons, was speculative and conjectural, and was not competent evidence that the balloons in the possession of defendant contained heroin." (P. 897.)

Without substance is appellant's further claim that there is not sufficient evidence to establish that he had dominion and control over the heroin. He has argued that there is no proof that he was involved in the injection by Cossairt or that the premises were controlled by him. While Officer Morgan did not see defendant physically possess the

[1]"I can't see any other rational conclusion other than they were illegally injecting heroin."

narcotic, there is sufficient evidence to establish defendant's dominion and control over the contraband.

Here also the elements of unlawful possession of a narcotic (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]) may be established by circumstantial evidence and any reasonable inferences to be drawn from such evidence (*People* v. *Groom*, 60 Cal.2d 694, 696-697 [36 Cal. Rptr. 327, 388 P.2d 359]) and alone may suffice to establish one's dominion and control over the narcotic (*People* v. *Dominguez*, 191 Cal.App.2d 704, 707 [12 Cal.Rptr. 910]); exclusive possession of the premises is not required nor is physical possession of the drug. (*People* v. *Roberts*, 228 Cal. App.2d 722, 726 [39 Cal.Rptr. 843].) In *Roberts*, joint possession and control were established by circumstantial evidence even though defendant was not in actual possession of the contraband and did not have exclusive possession over an automobile occupied by him and two others. Joint possession and control may be established solely by circumstantial evidence. (*People* v. *Powell*, 236 Cal.App.2d 881, 883 [46 Cal. Rptr. 415]; *People* v. *Roberts*, 228 Cal.App.2d 722, 726 [39 Cal.Rptr. 843]; *People* v. *Thomas*, 210 Cal.App.2d 553, 556 [26 Cal.Rptr. 843].)

Officer Morgan observed defendant and Cossairt enter the room occupied by Usher whom he knew to be a seller and user of narcotics; shortly thereafter he heard Usher "ask *them* if *they* had any stuff and Mr. Cossairt said, 'No, *we'll* have to go and score' " (italics added) whereupon defendant and Cossairt left; a half hour later defendant and Cossairt returned; in Cossairt's possession was a balloon and as he walked to the desk he said, "Nobody deals like they used to"; defendant stood by the desk while Cossairt placed the balloon on a newspaper, cut it open, and gave himself an injection. It was then forced entry was made. From the foregoing the inference is reasonable, and accordingly the trial judge properly found, that defendant and Cossairt procured the contraband while acting in concert and had joint possession and control of the heroin.[2] (See *People* v. *Roberts*, 228 Cal.App.2d 722, 726-727 [39 Cal.Rptr. 843].)

Finally, appellant claims that the testimony of Officer Morgan as to what he saw through the cracks of the venetian

---

[2] "MR. SHIBLEY [defense counsel]: If your Honor please, I feel that defendant Galfund is in a different position than defendant Cossairt.

"THE COURT: He didn't quite get time to do it [inject himself], but he was in possession of it.

"

blind was inadmissible because it violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and article I, section 19, California Constitution—that the officer's "Peeping Tom" activities were without his knowledge or consent and the observations constituted an illegal search and seizure. He concedes that the officers may observe what is in plain view but cannot clandestinely circumvent the venetian blind barricade of privacy.

"Since looking through a window does not constitute an unreasonable search [citations], the officers were entitled to act upon what they saw and arrest defendant. [Citations.]'' (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855].) Citing *Bielicki* v. *Superior Court*, 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288], the court in *People* v. *Willard*, 238 Cal. App.2d 292, 307 [47 Cal.Rptr. 734], said: "We therefore reach this final conclusion: That looking through a window does not become an unreasonable search merely because a police officer may be on defendant's premises when he makes the observation; that the degree of privacy which defendant enjoyed in the place involved is an important factor in determining the reasonableness of the search; and that essentially the determination of its reasonableness must depend upon the facts and circumstances of the particular case." Applying the foregoing criteria to the facts of the instant case, we can only observe that the officers' conduct was proper and reasonable. They went to the premises having information of suspicious activities of a known narcotic user and seller; they were not on defendant's premises when making their observations but, with the permission of the occupant, about 3 feet from the window in an adjacent yard; from where they were stationed anyone else could have looked into Usher's window and made the same observations (*People* v. *Willard*, 238 Cal. App.2d 292, 295, 307 [47 Cal.Rptr. 734]); the window was not to a bathroom or restroom but to a living room; and while at first the view was unobstructed, later the venetian blinds were closed but were such that they only partially obstructed the officer's view of the interior of the room, and he had a clear view of the desk area inside. The officers were not on defendant's premises and they did nothing to defendant's

"THE COURT: They left together and came back together and there was talk that to me indicates they went out and obtained heroin.

" . . . . . . . . .

"THE COURT: In my opinion there is no other reasonable or rational conclusion other than that the defendants Cossairt and Galfund were in possession of heroin. . . .''

window or the building to create the view such as bore holes, break glass or remove an obstruction. As to privacy, in *People v. Murray,* 218 Cal.App.2d 317 [32 Cal.Rptr. 348], "The officer then looked through the unpainted portion of the window (where the paint had worn off of the glass) into the men's restroom (of a laundromat) where he observed defendant examining a leafy substance which his previous police experience indicated to him was marijuana. It has been repeatedly held that looking through a window does not constitute an unreasonable search. [Citations.] Hence this observation of the officer did not violate any of the defendant's constitutional rights." (p. 320); and in *People v. Berutko,* *(Cal.App.) 68 Cal.Rptr. 754, "The window there was covered by a light curtain, so arranged that there was an aperture through which a part of the room was visible. Looking through that aperture, the officer saw a coffee table" on which there was heroin. *(Cal.App.) 68 Cal.Rptr. at pp. 756-757.) It is urged by appellant that by closing the venetian blinds he intended to make the room secret and protected his privacy and the room from open viewing; but the blinds still permitted a view. "When the act is done with an equal intent to conceal, but without normally effective acts that do conceal so that in fact a member of the general public could observe the act, observations by a police officer do not constitute a search at all. [Citations.]" (*People v. Holloway,* 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325].) Appellant's reliance on *Bielicki v. Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], *Britt v. Superior Court,* 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817], and other cases, is misplaced because the factual situation in the instant case is readily distinguishable from those involved in the cited cases.

The judgment is affirmed. Affirmance of the judgment carries with it affirmance of the sentence.

Wood, P. J., and Fourt, J., concurred.

---

*A hearing was granted by the Supreme Court on September 18, 1968. The final opinion of that court is reported in 71 Cal.2d —— [77 Cal.Rptr. 217, 453 P.2d 721].